UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

ROBBIE BOONE,

      Plaintiff,

v.

AUTONATION, INC.,

      Defendant.

_____/

## **COMPLAINT**

Plaintiff Robbie Boone ("Boone") sues Defendant AutoNation, Inc. ("AutoNation"), and alleges the following:

## **JURISDICTION**

1.    This is an action for damages in excess of $75,000, exclusive of interest, attorneys' fees, and costs, and injunctive and declaratory relief.

2.    Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Mr. Boone's claim under the Americans with Disabilities Act, 42 U.S.C. 12101, et seq. (the "ADA"). In addition, pursuant to 28 U.S.C. § 1332, this Court has original jurisdiction over Mr. Boone's claim under the Florida Civil Rights Act, Fla. Stat. § 760.01, et seq. (the "FCRA"), in that it involves citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Specifically, AutoNation is a citizen of Delaware and Florida, and Mr. Boone is a citizen of South Carolina. This Court has authority to grant injunctive and declaratory relief pursuant to the ADA, the FCRA, and/or the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

3.     This Court has personal jurisdiction because, among other things, AutoNation has operated, conducted, engaged in, or carried on a business or business venture in Florida, and AutoNation has engaged in substantial and not isolated activity within Florida.

4.     Pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 89(c), venue is proper in this Court because AutoNation resides in Florida, AutoNation resides in the Southern District of Florida, and a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of Florida.  The Fort Lauderdale Division is the proper division within the Southern District of Florida for this action.

## PARTIES

5.     Mr. Boone is a resident of Greenwood, South Carolina.  Mr. Boone falls under the protection of and the ADA and the FCRA because he has a disability as defined by the ADA and a handicap as defined by the FCRA.  Mr. Boone is a person as defined by the FCRA and ADA and an employee as defined by the ADA.

6.     AutoNation is a Delaware corporation with its principle place of business in Broward County, Florida.  According to AutoNation's website, AutoNation is the nation's largest auto retailer, with over 360 vehicle franchises across sixteen states.  AutoNation was and is an employer as defined by the ADA and the FCRA.

## CONDITIONS PRECEDENT

7.     On or about April 4, 2018, Mr. Boone dual-filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Rights ("FCHR") alleging disability discrimination.

8.     The EEOC issued a Notice of Right to Sue, which was dated October 16, 2018.

9.      Mr. Boone has filed this action within ninety days of receipt of the EEOC's Notice of Right to Sue.

10.     All conditions precedent have occurred or been performed.

## GENERAL ALLEGATIONS

11.     AutoNation hired Mr. Boone on April 1, 2002.

12.     AutoNation employed Mr. Boone as a trainer.

13.     As a trainer, Mr. Boone would train managers on legal compliance and train sales employees on productivity and sales techniques, among other training activities.

14.     Mr. Boone would remain in this training role until AutoNation terminated his employment on January 4, 2018.

15.     Mr. Boone suffers from what the ADA calls a disability and what the FCRA calls a handicap.   Mr. Boone suffers from claustrophobia, which is a mental disability/handicap involving an inability to be in closed or confined spaces.

16.     Mr. Boone's claustrophobia impacts what the law calls a "major life activity." The activities impacted include and are not limited to sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working, among other activities.

17.     Mr. Boone's disability/handicap generally precludes him from flying and otherwise staying in hotel rooms.  As such, Mr. Boone requires the use of a motor home. A motor home allows Mr. Boone to travel distances without having to fly as well as stay overnight without having to be in a hotel room.

18.     Sometime between 2011 and 2012, Mr. Boone went to his then-manager Kurt Horning and asked for an accommodation that would allow him to travel by motor home instead of flying and staying in a hotel room.

19.     AutoNation's then travel reimbursement policy, while covering the costs of airfare and hotel rooms, would not cover the costs of the motor home.

20.     The day following this conversation, Mr. Horning approved Mr. Boone's accommodation, including allowing Mr. Boone to be reimbursed for the motor home costs.  Mr. Horning however stated that the reimbursement for the motor home costs would not be in an amount that exceeded reasonable costs.

21.     Consistent with the approval of Mr. Boone's accommodation, Mr. Horning would approve the reimbursement of the motor home costs each and every time the costs were submitted over the next five or so years.

22.     In 2017, Mr. Boone began reporting to a new manager.  In November 2017, Mr. Boone's new manager, Josh Patterson, started questioning why Mr. Boone was using a motor home and submitting the costs for reimbursement. Mr. Boone explained how he requested an accommodation and that the accommodation had been approved. Mr. Boone further explained that consistent with accommodation, AutoNation had been approving his reimbursements for years.

23.     Several weeks later, around December 10, 2017, Mr. Patterson requested Mr. Boone to attend a meeting.  Mr. Patterson did not tell Mr. Boone that Mark Akbar, VP of Sales, would be in attendance at the meeting.  At the meeting, Mr. Patterson again questioned why Mr. Boone was using a motor home and that the submission of the motor home costs was a violation of the travel reimbursement policy.  Mr. Boone provided the same explanations he provided to Mr. Patterson in November.

24.     At no point during the meeting was Mr. Boone told to provide medical documentation to prove or otherwise support his disability/handicap.  Further, at no

point during the meeting did AutoNation engage in a dialogue to discuss whether there were alternatives that existed that would accommodate Mr. Boone's disability/handicap. By the conclusion of the meeting, Mr. Boone was told that AutoNation would be reviewing the matter and get back to Mr. Boone.  In the interim, Mr. Boone was instructed to continue doing what he was doing (using the motor home and submitting the costs for reimbursement).

25.     Mr. Boone would continue to use the motor home for work-related travel and would continue to submit the costs for reimbursement.  Notably, Mr. Boone's last report was approved and paid as it had been in the past by AutoNation, which is further evidence of discrimination.

26.     On January 4, 2018, Mr. Boone received a telephone call from Mr. Patterson.  Mr. Patterson stated that he needed to see Mr. Boone.  Mr. Boone responded that he was out on bereavement leave to help his wife because her father just passed away.  Mr. Patterson nonetheless asked Mr. Boone to fly down to meet.  Mr. Boone declined (in part because he was on bereavement leave and in part because Mr. Patterson knew Mr. Boone could not fly due to his disability/handicap).  Mr. Patterson responded that he would fly up to Mr. Boone's location.

27.     Later that same day, Mr. Patterson asked to have a call with Mr. Boone.  On the call were Mr. Boone, Josh Patterson (Senior Director, National F&I Operations), and Shelley Greenhalgh (Director Corporate Human Resources).  During this call, Mr. Boone was told that AutoNation was terminating his employment for violating the travel reimbursement policy (based on the submission of the expenses associated with his disability/handicap accommodation).

28.     Mr. Boone has retained the undersigned law firm to represent Mr. Boone in the litigation and has agreed to pay the firm a reasonable fee for its services.

**COUNT I:**
**VIOLATION OF THE ADA**

29.     Mr. Boone restates and realleges paragraphs 1 through 28 as if fully set forth herein.

30.     Mr. Boone was an employee with a disability as defined by the ADA.

31.     AutoNation was an employer as defined by the ADA.

32.     Mr. Boone is disabled in that he has an impairment that substantially limits one or more major life activities, a record of such impairment, or is regarded by AutoNation as having such an impairment.

33.     Mr. Boone suffers from claustrophobia.

34.     Mr. Boone's impairment substantially limits, among other major life activities, sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working.

35.     Even if not actually disabled, AutoNation regarded Mr. Boone as disabled or had a record of such an impairment.  This is based in part on the fact that AutoNation previously deemed Mr. Boone as disabled so as to provide an accommodation and then later sought to terminate Mr. Boone because of the accommodation needed for his disability.

36.     Mr. Boone is a qualified individual with a disability in that he is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that he held with AutoNation.  To the extent traveling is an essential function of the employment position, Mr. Boone is able to

perform that function by traveling in a motor home and staying overnight in a motor home.

37.     AutoNation unlawfully discriminated against Mr. Boone because of his disability.  As stated above, AutoNation ignored, rejected, or dismissed Mr. Boone's request for a reasonable accommodation and otherwise did not participate in the interactive process.  As stated above, AutoNation terminated Mr. Boone's employment because of his disability.  Further, the travel expense reimbursement policy provided that the employee(s) who approved an improper expense also would be subject to employment termination.  To Mr. Boone's knowledge, AutoNation did not terminate the employment of the employee(s) who approved Mr. Boone's expenses.

38.     As a direct, natural, proximate, and foreseeable result of AutoNation's actions and inactions, Mr. Boone has suffered past and future pecuniary losses, mental anguish, loss of dignity, and other intangible injuries.

39.     The discrimination against Mr. Boone, of which AutoNation's higher management was aware, participated in, and/or ratified, was in such reckless disregard of Mr. Boone's statutory rights against discrimination as to entitle Mr. Boone to an award of punitive damages against AutoNation to punish it and to dissuade such conduct in the future.

40.     The discrimination that Mr. Boone is suffering, in violation of his statutory right to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

41.     Mr. Boone is entitled to be awarded attorneys' fees pursuant to the ADA.

WHEREFORE, Mr. Boone prays that this Court will:   (a) issue a declaratory

judgment that AutoNation's practices towards Mr. Boone violate Mr. Boone's rights against discrimination under the ADA; (b) enjoin AutoNation, its management employees, and/or its agents to cease discriminating against Mr. Boone, to make him whole through an award of front pay as reinstatement is not practical given AutoNation terminated Mr. Boone, among other reasons; (c) enter a judgment for Mr. Boone and against AutoNation for damages, including back pay, other pecuniary losses, compensatory damages, and punitive damages; (d) grant Mr. Boone his costs, interest, litigation expenses, and attorneys' fees; and (e) grant Mr. Boone such other and further relief as the circumstances and law require and/or provide.

**COUNT II:**
**<u>VIOLATION OF THE FCRA</u>**

42.    Mr. Boone restates and realleges paragraphs 1 through 28 as if fully set forth herein.

43.    Mr. Boone was a person and an aggrieved person with a handicap as defined by the FCRA.

44.    AutoNation was an employer as defined by the FCRA.

45.    Mr. Boone is handicapped in that he has an impairment that substantially limits one or more major life activities, a record of such impairment, or is regarded by AutoNation as having such an impairment.

46.    Mr. Boone suffers from claustrophobia.

47.    Mr. Boone's impairment substantially limits, among other major life activities, sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working.

8

48.     Even if not actually handicapped, AutoNation regarded Mr. Boone as handicapped or had a record of such an impairment.  This is based in part on the fact that AutoNation previously deemed Mr. Boone as handicapped so as to provide an accommodation and then later sought to terminate Mr. Boone because of the accommodation needed for his handicapped.

49.     Mr. Boone is a qualified individual with a handicap in that he is an individual with a handicap who, with or without reasonable accommodation, can perform the essential functions of the employment position that he held with AutoNation.  To the extent traveling is an essential function of the employment position, Mr. Boone is able to perform that function by traveling in a motor home and staying overnight in a motor home.

50.     AutoNation unlawfully discriminated against Mr. Boone because of his handicap.  As stated above, AutoNation ignored, rejected, or dismissed Mr. Boone's request for a reasonable accommodation and otherwise did not participate in the interactive process.  As stated above, AutoNation terminated Mr. Boone's employment because of his handicap.  Further, the travel expense reimbursement policy provided that the employee(s) who approved an improper expense also would be subject to employment termination.  To Mr. Boone's knowledge, AutoNation did not terminate the employment of the employee(s) who approved Mr. Boone's expenses.

51.     As a direct, natural, proximate, and foreseeable result of AutoNation's actions and inactions, Mr. Boone has suffered past and future pecuniary losses, mental anguish, loss of dignity, and other intangible injuries.

52.     The discrimination against Mr. Boone, of which AutoNation's higher management was aware, participated in, and/or ratified, was in such reckless disregard of Mr. Boone e's statutory rights against discrimination as to entitle Mr. Boone to an award of punitive damages against AutoNation to punish it and to dissuade such conduct in the future.

53.     The discrimination that Mr. Boone is suffering, in violation of his statutory right to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

54.     Mr. Boone is entitled to be awarded attorneys' fees pursuant to the FCRA.

WHEREFORE, Mr. Boone prays that this Court will:  (a) issue a declaratory judgment that AutoNation's practices towards Mr. Boone violate Mr. Boone's rights against discrimination under the FCRA; (b) enjoin AutoNation, its management employees, and/or its agents to cease discriminating against Mr. Boone, to make him whole through an award of front pay as reinstatement is not practical given AutoNation terminated Mr. Boone, among other reasons; (c) enter a judgment for Mr. Boone and against AutoNation for damages, including back pay, other pecuniary losses, compensatory damages, and punitive damages; (d) grant Mr. Boone his costs, interest, and attorneys' fees; and (e) grant Mr. Boone such other and further relief as the circumstances and law require and/or provide.

KIM VAUGHAN LERNER LLP

## **DEMAND FOR TRIAL BY JURY**

55.     Mr. Boone demands a jury trial for all issues so triable.

Dated:  January 10, 2019                    Respectfully submitted,

                                            s/Brian L. Lerner
                                            Brian L. Lerner (Fla. Bar No. 177202)
                                            blerner@kvllaw.com
                                            Kim Vaughan Lerner LLP
                                            One Financial Plaza, Suite 2001
                                            Fort Lauderdale, Florida 33394
                                            Telephone:   (954) 527-1115
                                            Facsimile:   (954) 527-1116
                                            Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a true and correct copy of the foregoing document was served via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing on all counsel or parties of record on the Service List below.

s/Brian L. Lerner

## **SERVICE LIST**

Brian L. Lerner
blerner@kvllaw.com
Kim Vaughan Lerner LLP
One Financial Plaza
100 SE Third Avenue, Suite 2001
Fort Lauderdale, Florida 33394
Telephone:    (954) 527-1115
Facsimile:     (954) 527-1116
Attorneys for Plaintiff

Via Transmission of Notices of Electronic
Filing Generated by CM/ECF

AutoNation, Inc.
c/o Corporation Service Company (as
registered agent)
1201 Hays Street
Tallahassee, Florida 32301

Via Service of Process